WES OUTDOOR ADVERTISING COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, AND WESLEY K. BELL, PLAINTIFFS-APPELLANTS, v. DAVID J. GOLDBERG, COMMISSIONER OF TRANSPORTATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued January 5, 1970—Decided March 2, 1970.

*Mr. Alfred A. Faxon, III,* argued the cause for appellants (*Messrs. Schlesinger, Manuel and Schlosser,* attorneys).

*Mr. Stephen Skillman,* Assistant Attorney General, argued the cause for the respondent (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

HANEMAN, J. This is an appeal from a judgment of the Law Division of the Superior Court sustaining the constitutionality of *N. J. S. A.* 27:7–22.4 and authorizing the Commissioner of Transportation to condemn certain property allegedly for the purposes stated in said statute.

Plaintiffs are the owners, lessees or contract purchasers, of various parcels of real estate situated in the Township of Stafford, Ocean County, which lands lie, as stated in the hereafter referred to complaint, "adjacent to, but not within the right of way of New Jersey State Highway Route 72." On December 5, 1968, defendant, Commissioner of Trans-

portation of the State of New Jersey (Commissioner) announced his intention to acquire certain of the above referred to lands for highway beautification purposes in accordance with and as authorized by *N. J. S. A.* 27:7-22.4. Plaintiffs commenced an action in Lieu of Prerogative Writs contesting the Commissioner's power to condemn lands, on the ground that the said statute is unconstitutional because it contains no adequate standard to guide him in the selection of lands to be taken for the designated purpose. Plaintiffs obtained a temporary restraint and an order to show cause why an interlocutory injunction should not issue against defendant's proceeding with the acquisition. Defendant filed an answer, obtained a temporary restraint against plaintiffs, enjoining them from "destroying vegetation, erecting signs, structures, or in any way interferring (sic) with restoration, preservation and enhancement of scenic beauty of the lands identified in Exhibit A, * * *", and an order to show cause why an interlocutory injunction should not issue enjoining plaintiffs from committing said acts. Upon the return day, the court dissolved the temporary restraint against the defendant, denied plaintiffs' and granted defendant's motion for an interlocutory injunction. Plaintiffs' application to the Appellate Division for leave to appeal was granted. We certified the case on our own motion prior to argument in the Appellate Division. *R.* 2:12-1.

The only question before this Court is the constitutionality of *N. J. S. A.* 27:7-22.4 which reads:

"The commissioner is hereby authorized to acquire by gift, purchase or condemnation, real or personal property for landscape and roadside development appropriate for the restoration, preservation and enhancement of scenic beauty adjacent to Federal-aid highways and for the development of controlled rest and recreational areas and sanitary and other facilities to accommodate the public traveling on said highways; provided, however, that no such real or personal property shall be acquired by the commissioner for such purposes without first notifying in writing the governing body of the municipality or county owning such property or if such property is not owned by a municipality or county, the governing body of the municipality in which such property is located. Any property thus acquired shall be considered to be in-

tegral parts of the Interstate Highway System and the State highway system and the cost of said acquisition shall be considered as a part of the cost of the right-of-way of such highways. Any person whose property is purchased or otherwise acquired pursuant to this act shall receive just compensation therefor."

The statement accompanying the bill which became *N. J. S. A.* 27:7–22.4 reads:

"Under the provisions of the 'Highway Beautification Act of 1965' the State of New Jersey is eligible to receive funds for the restoration, preservation and enhancement of scenic beauty within and adjacent to Federal-aid highways and to develop rest and recreational area(s) and sanitary and other facilities to accommodate the public traveling on said highways. Approximately $1,464,137.00 could be allocated for these purposes to New Jersey if this bill is enacted and proper application is made prior to July 1, 1966." (Revised Statutes Cumulative Supplement, 1965, 1966, Chapter Titles and Statements, p. 659).

The "Highway Beautification Act of 1965" (23 *U. S. C. A.* § 319) reads:

"(b) An amount equivalent to 3 per centum of the funds apportioned to a State for Federal-aid highways for any fiscal year shall be allocated to that State out of funds appropriated under authority of this subsection, which shall be used for landscape and roadside development within the highway right-of-way and for acquisition of interests in and improvement of strips of land necessary for the restoration, preservation, and enhancement of scenic beauty adjacent to such highways, including acquisition and development of publicly owned and controlled rest and recreation areas and sanitary and other facilities within or adjacent to the highway right-of-way reasonably necessary to accommodate the traveling public, without being matched by the State."

Plaintiffs, admitting that the statutory provision for taking land "adjacent" to a "Federal-aid" highway somewhat limits the Commissioner's power, argue (1) that the provision for the appropriateness of land for the "restoration, preservation and enhancement of scenic beauty" is of such a subjective nature as to render "the language totally without meaning" and incapable of furnishing an intelligible guide, and is therefore so vague as to render the statute unconstitutional,

and (2) that in any event, there are insufficient standards to serve as an adequate guide for and limitation of the Commissioner's determination of the appropriate location and amount of land which may be acquired.

All of the parties to this litigation recognize that in connection with the State's condemnation of private property for public use:

> "The exercise of the State's sovereign power is the exclusive province of the legislative branch of the government; and, since the Legislature cannot in all cases directly supervise the taking of property by eminent domain, it may delegate the exercise of the right. It is for the Legislature to determine what constitutes a public use, a finding beyond judicial interference unless it be unreasonable and arbitrary and a perversion of the power." *State by McLean v. Lanza,* 27 *N. J.* 516 (1958), at 530, appeal dismissed 358 *U. S.* 333, 79 *S. Ct.* 351, 3 *L. Ed.* 2d 350 (1959), rehearing denied 359 *U. S.* 932, 79 *S. Ct.* 606, 3 *L. Ed.* 2d 634 (1959).

It is also admitted that some standard must be furnished by the legislature to the condemning agency as a guide in connection with the quantity and location of lands authorized to be acquired. See *Burnett v. Abbott,* 14 *N. J.* 291 (1954) ; *City of Newark v. N. J. Turnpike Authority,* 7 *N. J.* 377 (1951), appeal dismissed 342 *U. S.* 874, 72 *S. Ct.* 168, 96 *L. Ed.* 657 (1951) ; *Burton v. Sills,* 53 *N. J.* 86 (1968) ; *Sprissler v. Pennsylvania-Reading S. S. Lines,* 45 *N. J.* 127 (1965) ; *State v. Hotel Bar Foods,* 18 *N. J.* 115 (1955).

In connection with their first argument, plaintiffs are concerned with the words "scenic beauty," which they say is too vague to be employable as an objective guide. In effect they argue that the "restoration, preservation and enhancement of scenic beauty" does not adequately define a public purpose and the legislature therefore failed to articulate an intelligible guiding principle. We will initially consider whether the use for which *N. J. S. A.* 27 :7–22.4 authorizes the acquisition of land is "unreasonable and arbitrary and a perversion of the power" to acquire land and therefore not a public use. In *Lichter v. United States,* 334 *U. S.* 742,

785, 68 *S. Ct.* 1294, 1316, 92 *L. Ed.* 1694, 1726 (1947), the Court said:

It is not necessary that Congress supply administrative officials with a specific formula for their guidance in a field where flexibility and the adaptation of the congressional policy to infinitely variable conditions constitute the essence of the program. "If Congress shall lay down by legislative act an intelligible principle * * *, such legislative action is not a forbidden delegation of legislative power." *J. W. Hampton, Jr. & Co. v. United States*, 276 *U. S.* 394, 409, 48 *S. Ct.* 348, 72 *L. Ed.* 624, 630.

See also *Elizabeth Federal Savings and Loan Assoc. v. Howell*, 30 *N. J.* 190 (1959); *Wilson v. City of Long Branch*, 27 *N. J.* 360 (1958), *cert.* den. 358 *U. S.* 873, 79 *S. Ct.* 113, 3 *L. Ed.* 2d 104 (1958); *Cammarata v. Essex County Park Comm'n*, 26 *N. J.* 404 (1958); *Ward v. Scott*, 11 *N. J.* 117 (1952). To paraphrase the language of the statute, what the legislature here sought, was the restoration, preservation and enhancement of the natural condition of land adjacent to the federal highway system. The Act contemplates that there is a certain basic beauty in natural terrain and vegetation unspoiled by the hands of man, which it proposes to recapture or maintain. Although the extent to which each individual finds a specific landscape beautiful must be determined by a subjective test, this does not denote that there is no catholic criterion for the ascertainment of whether *any scenic beauty* exists in a given panorama. "Scenic beauty" is concerned with such manifold possible situations that it does not lend itself to a more specifically detailed descriptive statement. A tabulation of the various possible elements constituting scenic beauty is well-nigh impossible. The present interest in ecology and conservation demonstrates the necessity and public purpose of preserving land, as nearly as possible, in its native state. We have no hesitancy in stating that the restoration, preservation and enhancement of scenic beauty adjacent to public highways is a public use for the public welfare, filling a social need of our times. Hence, the power to acquire lands for that purpose is beyond

judicial interference. See *City of Trenton v. Lenzner,* 16
*N. J.* 465 (1954) at 470, cert. denied *Lenzner v. City of
Trenton,* 348 *U. S.* 972, 75 *S. Ct.* 534, 99 *L. Ed.* 757 (1955);
*Aviation Services v. Bd. of Adjustment of Hanover Tp.,* 20
*N. J.* 275, 281 (1956); *Markham Advertising Company v.
State,* 73 Wash. 2d 405, 439 *P.* 2d 248 (Wash. 1968),
appeal dismissed 393 *U. S.* 316, 89 *S. Ct.* 553, 21 *L. Ed.* 2d
512 (1969), rehearing denied 393 *U. S.* 1112, 89 *S. Ct.* 854,
21 *L. Ed.* 2d 813 (1969).

Plaintiffs' last two arguments concern the location and
quantity of land authorized to be taken. Plaintiffs state that
there is no limit on either. In *Burnett v. Abbott, supra,*
we said:

The cases and authorities are in agreement that in condemnation
proceedings the quantity of land to be taken, its location and the
time of taking are within the discretion of the body endowed by the
Legislature with the right of eminent domain. (14 *N. J.* at 294).

See also *City of Newark v. N. J. Turnpike Authority, supra,*
7 *N. J.* at 381.

█ Although the statute does not in finite terms impose
a specific limit upon the amount of land which may be
acquired, the express purpose of acquisition does delineate a
sufficient guide for a reasonable exercise of the power of
condemnation. In light of the objectives of the statute it is
difficult to envision a more specific limitation which would
not by expression or omission unduly restrict the Com-
missioner. The very purposes of the act require that he be
granted a considerable degree of discretion. Plaintiffs'
hypothetical projections of possible abuses are irrelevant as
an adequate standard is furnished for a limitation on the
exercise of the power of condemnation. The public is pro-
tected from an abuse of power or an arbitrary exercise of
discretion by recourse to the courts. See *Bergen County v.
Hackensack,* 39 *N. J.* 377, 381 (1963).

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For reversal*—NONE.